```
              UNITED STATES DISTRICT COURT
                 DISTRICT OF MINNESOTA
                   06-CV-2263(JMR/RLE)
```

Delwyn Holthusen, Jr.            )
                                 )
         v.                      )       ORDER
                                 )
United States of America         )

This case arises from a high-speed car chase and crash. Plaintiff, Delwyn Holthusen, was riding in a car pursued by police officers of the Red Lake Band of Chippewa Indians. He has sued the United States under the Federal Tort Claims Act. The government seeks dismissal for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure ("Fed. R. Civ. P."). The government's motion is denied.

I. Background[1]

During the evening of March 12, 2004, Dan Neadeau drove his mother's car to the Red Lake Fitness Center, where plaintiff was finishing his work shift. As Neadeau approached, plaintiff realized he looked intoxicated and saw him drinking liquor out of a bottle. Neadeau repeatedly invited plaintiff to ride around town with him. After several refusals, plaintiff eventually agreed to go. According to plaintiff, he hoped to persuade Neadeau that he

---

[1] The Court "is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case." Osborn v. United States, 918 F.2d 724, 730 (8th Cir. 1990). The facts set forth in this Opinion are based on the parties' pleadings and submissions; they are used for purposes of this motion, and are not binding determinations.

was too drunk to drive and that he should go home.

Plaintiff did not know local law enforcement had been looking for Neadeau for some time. Earlier that day around noon, Neadeau's mother called the Red Lake Police to reported that her son had been drinking and had taken her car without permission. Red Lake Police received a second call from Neadeau's uncle at approximately 7:42 p.m. that evening. The uncle said he and Neadeau's mother were following Neadeau, who was "really drunk" and driving near Red Lake's elementary school. (Defendant's Memorandum in Support of Motion, Ex. 1.)

It is not clear whether plaintiff got in Neadeau's car before the second call, but he clearly failed to persuade Neadeau to go home. Neadeau then agreed to drive plaintiff to his car. Meanwhile, the Red Lake Police responded to the second call, locating Neadeau's car within minutes.

As Neadeau prepared to turn into the lot where plaintiff's car was parked, Officer Tyson Nelson of the Red Lake Police Department pulled in behind him and turned on his emergency lights. When the lights came on, Neadeau aborted his turn and sped onto Highway 1. Officer Nelson, quickly joined by Red Lake Officers Robert Van Wert and Corporal Leonard Red Cloud, followed. Van Wert took over the pursuit. The chase went past Red Lake's residential areas and the village of Redby at speeds between 70 and 100 miles per hour.

Just past Redby, Neadeau came to Officer Maurice Lawrence's

squad car partially blocking the eastbound lane. He swerved to avoid hitting the squad car, lost control of his vehicle, and skidded off the highway into a tree. The crash injured plaintiff's hip and back.

On March 8, 2006, plaintiff properly filed his administrative claim with the Department of the Interior. (Def. Mem. Ex. 2.) The Department denied his claim on April 5, 2006. Plaintiff timely filed this action alleging the United States is liable under the Federal Tort Claims Act for the officers' negligence during the pursuit. The United States moves to dismiss.

II. <u>Analysis</u>

Jurisdictional issues, whether involving questions of law or fact, are decided by the court. <u>Osborn v. United States</u>, 918 F.2d 724, 729 (8th Cir. 1990). Thus, when considering a Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction, the court "is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case." <u>Id.</u> at 730. Plaintiff bears the burden of establishing jurisdiction. <u>Id.</u>

Plaintiff claims the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 1346(b)(1), gives this court jurisdiction over his negligence claim. The FTCA contains a waiver of sovereign immunity, and gives federal courts jurisdiction over civil actions involving, among other things, personal injuries caused by government employees' negligence while acting within their scope of

3

employment. For purposes here, the United States recognizes the Red Lake officers as federal employees subject to the FTCA. See 28 U.S.C. §§ 1346(b), 2680(h); 25 U.S.C. §§ 450f, 450h, 2802-2804; 25 C.F.R. 12.21(b); see also Red Elk v. United States, 62 F.3d 1102, 1103 n.1 (8th Cir. 1995).

Courts have FTCA jurisdiction "under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place" where the claimed negligence occurred. 28 U.S.C. § 1346(b)(1). Because these events occurred in Minnesota, Minnesota's law defines the "law of the place." LaFromboise v. Leavitt, 439 F.3d 792, 795 (8th Cir. 2006). The United States, subject to exceptions not relevant here, is liable "in the same manner and to the same extent as a private individual under like circumstances." 28 U.S.C. § 2674.[2]

The Court finds Minnesota's law governing liability of state or local law enforcement officers[3] is the closest analogue to the liability of a "private individual." See Washington v. Drug

---

[2] While this case was under advisement, the United States Supreme Court issued its opinion in Scott v. Harris, 127 S. Ct. 1769 (U.S., April 30, 2007). Scott held that "[a] police officer's attempt to terminate a dangerous high-speed car chase that threatens the lives of innocent bystanders does not violate the Fourth Amendment, even when it places the fleeing motorist at risk of serious injury or death." Id. at 1779. In the present case, plaintiff raises no constitutional claims, rendering Scott inapplicable.

[3] For convenience, the Court will refer to both state and local officers as "local law enforcement officers."

Enforcement Admin., 183 F.3d 868, 873, 874 (8th Cir. 1999)("private analogue to the government's conduct" for FTCA case involving execution of a search warrant was that of law enforcement officer).

Under Minnesota law, a police officer may be liable for injuries resulting from negligent pursuit. See Cairl v. City of St. Paul, 268 N.W.2d 908, 911-12 (Minn. 1978) ("we have always held that liability arising out of the operation of emergency vehicles is predicated upon negligence"). Officer liability is, however, subject to the defense of official immunity. Mumm v. Mornson, 708 N.W.2d 475, 490 (Minn. 2006). And, as in all negligence cases, a defendant is not liable in the absence of a duty of care. See H.B. ex rel. Clark v. Whittemore, 552 N.W.2d 705, 710 (Minn. 1996) (reinstating summary judgment for defendant due to lack of duty of care). The Court, then, considers whether under Minnesota law local law enforcement officers can be liable for negligent conduct. If local law enforcement officers are immune or have no duty of care, this Court is without subject matter jurisdiction.

"Official immunity prevents a public official charged by law with duties which call for the exercise of his judgment or discretion from being held personally liable for damages, unless the official has committed a willful or malicious act." Mumm, 708 N.W. at 490 (internal quotations and citations omitted). Entitlement to immunity turns on the facts of the case. Elwood v. County of Rice, 423 N.W.2d 671, 678 (Minn. 1988). The Court first

identifies the "precise governmental conduct at issue," then asks whether the officers' acts involved "ministerial or discretionary" duties. <u>Mumm</u>, 708 N.W.2d at 490. Finally, if the duties are discretionary, the Court considers whether the officers acted willfully or maliciously. <u>Id.</u>

Plaintiff claims the Red Lake officers were negligent in "engaging in the high-speed chase" in violation of Red Lake's policy, and in "the manner in which the chase was conducted." (Complaint ¶ VI.) Plaintiff, specifically, claims the officers "negligently pursued the intoxicated Dan Neadeau at high speeds, and then blocked his path at the crest of a hill . . . ." (Plaintiff's Mem. at 11.) The Court finds the precise governmental acts at issue to be the officers' decisions (1) to initiate and continue the chase, and (2) to block the driver's path with a squad car.

The nature of the act determines whether it is ministerial or discretionary: a "ministerial" act is "absolute, certain and imperative, involving merely the execution of a specific duty arising from fixed and designated facts," while a "discretionary" act involves "more individual professional judgment that necessarily reflects the professional goal and factors of a situation." <u>Id.</u> at 490-91.

Minnesota generally considers police pursuit in emergency situations to be discretionary. <u>See</u> <u>Pletan v. Gaines</u>, 494 N.W.2d

6

38, 41 (Minn. 1992). But Minnesota recognizes an exception for police pursuits governed by an official policy mandating certain conduct. See Mumm, 708 N.W.2d at 491. For example, in determining whether a Minneapolis police pursuit was ministerial or discretionary, the Minnesota Supreme Court considered the City's adopted pursuit policy.

> The City's policy provided that:
>
> Officers shall not initiate a pursuit or shall discontinue a pursuit in progress whenever any of the following conditions exists:
> * * *
> (2) the officer can establish the identification of the offender so that an apprehension can be made at another time unless the crime is for homicide, 1st and 2nd degree assault, aggravated robbery, sexual assault involving the use or threatened use of a dangerous weapon, [or] kidnapping.
> * * *
> [O]fficers involved in a pursuit have the right to decide whether or not to terminate their participation in a pursuit.

Id. at 491-92.

In Mumm, Minneapolis officers claimed the policy language gave them the "right to decide," making their actions discretionary. Id. at 492. The Minnesota Supreme Court did not agree. Citing the rule of statutory construction rule under which specific provisions control general ones, see Minn. Stat. § 645.26, subd. 1, the Court found Minneapolis officers only had discretion under circumstances which were not covered by the policy's specific pursuit-terminating provisions. Mumm at 492. In Mumm, the officers knew the driver's

7

identity, and knew she was not suspected of crimes which triggered the policy's exceptions. As a result, the Court found Minneapolis's policy imposed a "mandatory duty to refrain from initiating or to discontinue pursuit." Id. at 491. The policy gave the officers "no discretion to exercise independent judgment," and imposed a "narrow and definite duty on an officer facing a particular set of circumstances, rendering that officer's duty ministerial." Id. at 492.

Accordingly, under Minnesota law, this Court must determine whether the Red Lake officers' actions were ministerial or discretionary with reference to the Red Lake Department of Public Safety's adopted pursuit policy. Section 3 of that policy defines conditions under which officers "will not initiate a pursuit and will discontinue a pursuit in progress."

Relevant to this case, the policy provides:

```
1. EMERGENCY DRIVING POLICY . . . [O]fficers will use
their reasonable professional judgment in deciding when,
where, and to what extent they will initiate pursuit of
suspects in motor vehicles.
* * *
3. INITIATING OR CONTINUING A PURSUIT . . . Officers will
not initiate a pursuit and will discontinue a pursuit in
progress whenever any of the following conditions exist:
* * *
    2. The officer can establish the identification of
    the offender so that an apprehension can be made at
    another time.
* * *
Any officers involved in a pursuit have the right to
decide whether or not to terminate their participation in
a pursuit, or to transfer their responsibility to another
squad.
```

(Def. Mem., Ex. 3.)  The "offender" is the "operator of a vehicle being pursued who has been signaled to stop."  An operator may be identified by "license plate" or "visual identification."  Id.

The Court considers it fair to say Red Lake's driving policy is not a model of consistency as it defines officer discretion. Grants of discretion ("officers . . . have the right to decide") are interspersed with clear, unambiguous directives ("officers will not initiate . . . and will discontinue . . .") mandating certain actions.

The government claims these provisions can be harmonized without conflict.  According to the government, Red Lake officers had discretion to either initiate or discontinue Neadeau's pursuit. Alternatively, the government argues Section 3, Paragraph 2 -- providing that officers "will not initiate" and "will discontinue" pursuit -- itself allows discretion.  The Court does not agree.

On its face, the policy's declaration that an officer "will" act cannot be reconciled with an exercise of discretion. Mumm, 708 N.W.2d at 492 ("shall discontinue" gives "no discretion"). And, as in Mumm, the Court finds the policy's grants of discretion are general, and conflict with its specific direction to terminate pursuit under prescribed conditions.  Mumm, 708 N.W.2d at 492. When those particular conditions occur, the policy language leaves officers no room to exercise professional judgment - the pursuit must be terminated.  The Court finds Red Lake's policy's plain

language, at Section 3, imposes a ministerial duty: an officer must discontinue pursuit once the "officer can establish the identification of the offender so that an apprehension can be made at another time."

The government asks the Court to find an additional area of discretion remains granting officers leave to determine whether the prescribed conditions exist. This argument asks the Court to contort the above-quoted words, allowing the officers to continue this chase until obtaining both visual confirmation that Dan Neadeau was driving, and probable cause to arrest him for driving under the influence of alcohol. (Def. Reply Mem. at 9-13.)

The Court will not adopt this tortured reading. Were it to do so, Red Lake's policy would be rendered wholly ineffectual. Even the government recognizes that the "objective indications of intoxication" required for a DUI arrest cannot be made "until the driver stops and allows police observation." (Def. Reply Mem. at 9.) Therefore, using the government's proposed reading, an officer pursuing a DUI suspect is given discretion to continue the pursuit until the driver is stopped - and, presumably, DUI-tested - even if the driver's identity was known. The Court considers that if "identification . . . so that an apprehension can be made at a later time" means the same thing as full probable cause to arrest for a particular offense, Paragraph 2 is a nullity.

Fortunately, the Court need not venture down this road. The

10

Minnesota Supreme Court considered identical language in Mumm and gave it no special reading. The Court merely considered whether the officers knew the identity of the driver. Mumm, 704 N.W.2d at 491-92. Because it was undisputed that they did, the Court found their action ministerial.

The Court now asks if the officers knew the identity of the driver in this case. The answer is "they did." The record at this stage is necessarily sparse. But the officers clearly knew of Karen Neadeau's phone call saying the car belonged to her and had been taken without permission. They had two calls saying Dan Neadeau was driving, the most recent of which, minutes before the chase, said he was "really drunk." On these facts, the Court is satisfied the officers had sufficient information at the start of chase that Dan Neadeau was driving. While the existence of probable cause to arrest remains problematic, the police knew he took the vehicle without permission, and they had actually seen his erratic driving. When Neadeau ignored Officer Nelson's signal to stop, the officers had a further basis for later apprehension.[4]

---

[4] The government suggests the presence of a passenger made it impossible to identify which person was, in fact, the driver. (Def. Reply Mem. at 7-8.) The Court concludes the reports from Neadeau's mother and uncle – neither of which mention a passenger – were sufficient information upon which the officers could identify Neadeau for later apprehension. In addition, if this argument were accepted, any car with a driver and passenger could be chased until stopped to pin down the driver's identity. Such a reading would eviscerate the Band's officer pursuit policy for cars containing more than one person.

On these facts, the Court is fully confident the officers could "establish the identification of" Dan Neadeau "so that an apprehension can be made at another time." It is a sophistry to deny it. Once they had this knowledge, Red Lake's policy required them to refrain from pursuit. The policy's mandate is ministerial. Under the Minnesota Supreme Court's <u>Mumm</u> decision, local law enforcement officers who failed to follow such a policy would not be protected by official immunity.

The decision to block Neadeau's path is different. Plaintiff proffers no language imposing a ministerial duty to refrain from blocking a fleeing vehicle. The decision to select a partial blockage of the road as a means of deterring Neadeau's continued flight remains within the officers' discretion, and is protected by official immunity under Minnesota law. <u>See</u> <u>Pletan</u>, 494 N.W.2d at 41.

The Court now considers whether the pursuing officers owed a duty of care to Holthusen, the passenger-plaintiff. Minnesota's traffic statute imposes upon emergency vehicle drivers – including drivers of law enforcement vehicles – "the duty to drive with due regard for the safety of persons using the street." Minn. Stat. § 169.17; <u>see also</u> Minn. Stat. § 169.20 subd. 5(d). The Minnesota Supreme Court has construed these statutes as imposing a negligence standard of care on police officers operating vehicles under emergency situations. <u>See</u> <u>Cairl</u>, 268 N.W. at 912-13. A negligence

12

standard has been applied in an action brought by an injured passenger in the vehicle being pursued. See Cummins v. Klenk, 474 N.W.2d 443, 445 (Minn. Ct. App. 1991), citing Edberg v. Johnson, 184 N.W. 12, 13-14 (Minn. 1921) (police officer on motorcycle pursuing fleeing suspect is "required to observe the care which a reasonably prudent man would exercise in the discharge of official duties of a like nature under like circumstances").

Beyond any statutory duty, Minnesota common law imposes a duty of care to avoid foreseeable harm. See Austin v. Metro. Life Ins. Co., 152 N.W.2d 136, 138 (Minn. 1967) ("the common-law test of duty is the probability or foreseeability of injury to plaintiff"), citing Palsgraf v. Long Island R. Co., 248 N.Y. 339, 344 (N.Y. 1928). A foreseeable harm giving rise to a duty of care arises where it is "objectively reasonable to expect that the specific danger will result in injury[.]" Kuhl v. Heinen, 672 N.W.2d 590, 593 (Minn. Ct. App. 2003).

Applying these principles, the Court finds defendants owed plaintiff both a statutory and common law duty of care. Giving § 169.17 its plain reading, plaintiff, a vehicular passenger on a public road, was "using the street." The pursuing officers, therefore, owed him a duty to drive with due regard for his safety. The Court also finds a high-speed chase presents an objectively reasonable risk of a crash, which may cause injury to the occupants of vehicles involved in the chase. The Court finds the injury to

plaintiff was foreseeable.

Other jurisdictions have considered this issue with varying results. See, e.g., Robinson v. City of Detroit, 613 N.W.2d 307, 314 (Mich. 2000) (holding police owe duty of care to innocent persons, including passengers in a fleeing vehicle) and Fisher v. Miami-Dade County, 883 So. 2d 335, 336 (Fla. Ct. App. 3d Dist. 2004) (no duty of care owed to passengers in fleeing vehicles). The Minnesota Supreme Court has not squarely addressed these issues.

Minnesota's Court of Appeals dismissed a case brought by a passenger in a fleeing vehicle. It observed that a pursuing officer was "required to observe the care which a reasonably prudent man would exercise in the discharge of official duties of a like nature under like circumstances," but affirmed a directed verdict, finding there was no negligence in the case. Cummins, 474 N.W.2d at 445. Id.; see also Van Tassel v. Hillerns, 248 N.W.2d 313, 315 (Minn. 1976) (affirming judgment on jury verdict where court gave similar instruction on negligence standard of care).

The Court holds that, if confronted with the question, the Minnesota Supreme Court would find the officers' duty of care extends to a passenger in a vehicle being pursued.

The government's proffered "special relationship" cases are inapposite. Those cases concern a defendant's duty to protect the

plaintiff from foreseeable harm caused by persons other than defendant – for example, harm caused by plaintiff himself or by a third party while plaintiff was under defendant's particular control. See, e.g., Donaldson v. Young Women's Christian Ass'n of Duluth, 539 N.W.2d 789, 792 (Minn. 1995); Zosel v. Minn-Dak Farmers' Coop., Inc., 463 F. Supp. 2d 960, 962 (D. Minn. 2006). These are not the present facts.

Similarly, "special duty" cases are inapplicable. This is not a situation where plaintiff claims defendants are negligent for failing to enforce laws intended to protect the general public, such as building codes. See, e.g., Cracraft v. City of St. Louis Park, 279 N.W.2d 801, 804 (Minn. 1979) ("general duties owed to the entire public rather than a specific class of persons cannot form the basis of a negligence action"). Plaintiff's claim is much more simple: he claims the officers were obliged to exercise due care in pursuing the vehicle in which he was a passenger, and that they failed to fulfill that duty.

Because the Court finds local law enforcement officers would face potential liability to plaintiff on these facts under Minnesota law, the United States faces potential liability to the same extent. Therefore, under the FTCA, the Court has subject matter jurisdiction over plaintiff's claim concerning the officers' decision to pursue Neadeau.

III. Conclusion

For the foregoing reasons, the United States' motion to dismiss is denied.

Dated: July 30, 2007

<u>/s James M. Rosenbaum</u>
JAMES M. ROSENBAUM
United States District Judge
